**Electronically Filed**
**Intermediate Court of Appeals**
**30550**
**21-FEB-2013**
**10:30 AM**

NO. 30550

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE MATTER OF THE TAX APPEAL OF
BOBBY R. NARMORE, Taxpayer/Appellant, v.
STATE OF HAWAI'I, DIRECTOR OF TAXATION, Appellee

APPEAL FROM THE TAX APPEAL COURT OF THE STATE OF HAWAI'I
(TAX APPEAL CASE NO. 02-1-0066)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Fujise and Leonard, JJ.)

Taxpayer/Appellant Bobby R. Narmore (**Narmore**) appeals *pro se* from the March 2, 2010 Judgment entered by the Tax Appeal Court of the State of Hawai'i (**Tax Appeal Court**)[1] and challenges two orders (1) granting Appellee State of Hawai'i Department of Taxation's (**Department**) Motion for Summary Judgment, and (2) denying Narmore's Hawai'i Rules of Civil Procedure (**HRCP**) Rule 60(b) motion to set aside the summary judgment order.

Narmore's points of error on appeal appear to be that the Tax Appeal Court erred in granting the Department's motion for summary judgment because:[2]

---

[1]     The Honorable Gary W.B. Chang presided.

[2]     Narmore's opening brief fails to comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4), which provides that an opening brief shall contain:

> A concise statement of the points of error set forth in separately numbered paragraphs.  Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. . . .
> (continued...)

(1)    the Department was barred by the statute of limitations from collecting general excise taxes from Narmore for the 1989 tax year;

(2)    the Department was required, under Hawaii Revised Statutes (HRS) chapter 237 or otherwise, to audit Narmore's tax information and make an assessment within three years of his participation in the Department's Non-Filer's Program; and

(3)    the Department improperly and fraudulently altered Narmore's 1989 tax return.

Narmore also contends that the Tax Appeal Court erred in denying his HRCP Rule 60(b) motion for reconsideration.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Narmore's points of error as follows:

(1)    At times relevant to this case, HRS § 237-40(a) (2001)[3] provided:

> § 237-40  Limitation Period.  (a)  General rule.  The amount of excise taxes imposed by this chapter shall be assessed or levied **within three years after the annual return was filed**, or within three years of the due date prescribed for the filing of said return, whichever is later, and no proceeding in court without assessment for the collection of any such taxes shall be begun after the expiration of the period.

(Emphasis added.)  However, the exception to the general rule explicitly provided, "[i]n the case of . . . a failure to file

_____

[2](...continued)
> **Points not presented in accordance with this section will be disregarded**, except that the appellate court, at its option, may notice a plain error not presented.

(Emphasis added.)  Nevertheless, recognizing the Hawai'i appellate courts' policy of having appeals heard on the merits where possible, Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995), the issues raised in Narmore's appeal will be analyzed and addressed to the extent possible.

[3]    Unless otherwise specifically noted, all references to HRS chap. 237 refer to the provisions applicable to this case and do not include reference to subsequent amendments.

2

the annual return, the tax may be assessed or levied **at any time**[.]" HRS § 237-40(b) (2001) (emphasis added).

Narmore contends that a limitation period began to run when he provided his tax-related information to the Department as part of the Department's "Non-Filer Program" in 1993, because, at that time, the Department was given sufficient information to complete his annual general excise tax return for the 1989 tax year and/or to assess general excise taxes. The sworn declaration of Ken Cook, the Department's Audit Branch Chief, includes uncontroverted testimony that the Department did not issue a general excise tax assessment against Narmore for the 1989 tax year.

The language in HRS § 237-40 is not ambiguous, and instead clearly articulates the period in which the Department may assess or levy general excise taxes. Despite Narmore's arguments to the contrary, there is no statutory provision or other authority supporting the proposition that merely furnishing tax-related information to the Department, rather than filing a tax return, would begin the running of the statutory limitation period. Accord Edwards v. C.I.R., 680 F.2d 1268, 1269 (9th Cir. 1982) (similarly interpreting parallel federal law). Accordingly, we reject Narmore's argument that the Department was barred by the statute of limitations from collecting taxes from Narmore for the 1989 tax year.

(2) Narmore asserts that both under the Department's 1993 Non-Filer Program, and under "normal 237 HRS audit requirements," the Department was "required" to make an assessment when it was given sufficient information to do so in 1993.

Narmore's reliance on "normal 237 HRS audit requirements" as mandating a three-year statute of limitations period is misplaced. The statutes governing the assessment and

3

audit of general excise taxes contain no such limitation period. HRS § 237-39 (2001), governing audits, provided:

> §237-39 Audits; procedure, penalties. For the purpose of verification or audit of a return made by the taxpayer . . . or for the purpose of making an assessment where no return has been made, the department of taxation . . . may examine all account books, bank books, bank statements, records, vouchers, taxpayer's copies of federal tax returns, and any and all other documents and evidences having any relevancy to the determination of the gross income or gross proceeds of sales of any taxpayer as required to be returned under this chapter . . . .
>
> If the department determines that any gross income or gross proceeds of sales liable to the tax have not been assessed the department may assess the same as provided in sections 237-36 and 237-38.

HRS § 237-39 authorizes the Department to access information in order to make an assessment where no return has been made, and to verify tax information where a return has been made. Id. This provision, however, governs the procedure for performing an audit and does not impose upon the Department a specific time period in which an audit must be completed.

HRS § 237-38 (2001), entitled "Failure to make return," specifically governs the assessment of taxes where no return has been made, and provided that

> [i]f any person fails, neglects, or refuses to make a return, the department of taxation may proceed as it deems best to obtain information on which to base the assessment of the tax. After procuring the information the department shall proceed to assess the tax as provided in section 237-36.

This section does not impose upon the Department a time specific in which taxes must be assessed following the procurement or receipt of tax information. While Narmore claims that the Department is required to make an assessment where no return is filed, whether the Department "may" or "shall" proceed to assess taxes where no return is filed is irrelevant, as, pursuant to the statute, the Department is not subject to a three-year period to complete such an assessment where no return has been filed.

Lastly, HRS § 237-36 (2001), outlines the procedures for tax assessments based on erroneous returns and the disallowance of exemptions. HRS § 237-36; Tax Appeal of Baker & Taylor, Inc. v. Kawafuchi, 103 Hawai'i 359, 363 n.10, 82 P.3d 804, 808 n.10 (2004). HRS § 237-36 provides that where "any return made" is erroneous, deficient, or improperly disclaims liability or applies for an exemption, "the department of taxation shall correct the error or assess the proper amount of taxes." HRS § 237-36 further articulates the procedure required for the Department to assess taxes, and provides for both preliminary and final notices to the taxpayer of any taxes being assessed; however, "[n]o preliminary notice shall be necessary where the amount of the tax is calculated by the department from gross income returned by the taxpayer as subject to the tax[.]" Id. This statutory provision also does not provide a specific limitation period in which the Department is required to complete an assessment. See id.

As discussed above, HRS § 237-40 (2001) imposed no limitation period on the Department's assessment of taxes where no return has been filed, and instead provided that absent a return, taxes may be "assessed or levied at any time[.]" HRS § 237-40(b).

Narmore also argues that, in conjunction with the Department's Non-Filer Program, the Department had an obligation to prepare and file tax returns on behalf of those taxpayers who have failed to do so. However, based on the applicable law and the undisputed facts, the Non-Filer Program did not extend such an obligation to the Department.

Pursuant to HRS § 237-33 (2001), entitled "Annual return, payment of tax,"

> On or before the twentieth day of the fourth month following the close of the taxable year, **each taxpayer shall make a return** showing the value of products, gross proceeds of sales or gross income, and compute the amount of tax chargeable against the taxpayer in accordance with this chapter and deduct the amount of monthly payments (as

> hereinbefore provided), and transmit with the taxpayer's
> report a remittance in the form required by section 237-31
> covering the residue of the tax chargeable against the
> taxpayer to the district office of the department of
> taxation hereinafter designated.

(Emphasis added.) Based on this statutory provision, it remains the responsibility of the taxpayer to make and file an annual return. Id.

The Non-Filer Program apparently was intended to "help people who have not filed tax returns and want to get back into the system." As indicated in an advertisement for the Non-Filer Program, submitted into the record by both parties, non-filers were instructed to bring tax information "needed to help prepare the tax return." There is no evidence in the record to support the proposition that the Department's Non-Filer Program imposed upon the Department, or that the Department undertook, a "duty" to complete a return based upon the taxpayer's records or to make an assessment within a particular period of time.

On October 24, 1996, the Department's Collection Division sent a notice to Narmore indicating that a general excise return for the 1989 tax year had not been filed, and requested that Narmore submit his 1989 return by November 4, 1996. After some communications between the Department and Narmore regarding the tax information furnished in 1993, at some time in December of 1996, Narmore submitted his "Annual Return Reconciliation General Excise/Use Tax Return for Calendar Year 1989." Although there is some dispute as to the creation of a second 1989 tax return, it is uncontested that Narmore filed a return for the 1989 tax year in December 1996. On January 7, 1997, less than a month after Narmore's 1989 tax return was filed, the Department credited Narmore's account in the amount of $5,365.92 for general excise tax due for the 1989 tax year.

Accordingly, the only applicable statute of limitations period began in December of 1996, when Narmore's 1989 tax return was filed.

(3) We reject Narmore's argument that the Circuit Court improperly granted summary judgment on his allegation that the Department improperly and fraudulently altered his 1989 general excise tax return. It appears that, after Narmore signed the 1989 tax return, the Department corrected the return, by zeroing out the interest and penalties to reflect that it had waived interest and penalties for the 1989 tax year. HRS § 237-36 provides that "[i]f any return made is erroneous . . . the department of taxation shall correct the error or assess the proper amount of taxes." Moreover, while notice must be given to the taxpayer where the Department's recomputation results in an additional tax liability, "[n]o preliminary notice shall be necessary where the amount of the tax is calculated by the department from gross income returned by the taxpayer as subject to the tax[.]" Id. Accordingly, the Department was authorized to correct Narmore's 1989 tax return, by waiving the interest and penalties and editing the return to reflect this waiver. The Tax Appeal Court did not err when it rejected Narmore's assertion that the Department's action was improper and fraudulent.

Relatedly, in his reply brief, Narmore challenges the Department's re-allocation to other tax liabilities, rather than refund to Narmore, of the "excess" payment made in conjunction with the submission in December 1996 of the 1989 general excise tax return. After the waiver of the penalties and accrued interest, the total amount due from Narmore for the 1989 tax year was $5,365.92. However, Narmore had remitted payment via a cashier's check, dated December 16, 1996, for $13,000.[4] Narmore maintains that he was told his 1989 tax liability "would be paid out of the $13,000 cashier's check[.]" Ken Cook averred that a payment of $5,365.92 for the 1989 tax year was credited to

---

[4] Prior to the waiver of accrued interest and penalties, the total tax liability for 1989 reportedly was $12,179.93. Thus, even without consideration of the waiver, the $13,000 represented an overpayment of $820.07.

Narmore's account on January 7, 1997. The balance of the amount was credited to Narmore's account for other outstanding tax liabilities.

> HRS § 237-37 (2001) provides, in part:
>
> If the amount already paid exceeds that which should have been paid on the basis of the tax recomputed as provided in section 237-36, the excess so paid shall be immediately refunded to the taxpayer in the manner provided in section 231-23©.

> HRS § 231-23(c)(1) (2001), which by its terms applies to all taxes, provides in relevant part:
>
> [I]f the person entitled to the refund is delinquent in the payment of any tax, the comptroller, upon demand of the collector and after notice to the delinquent taxpayer, shall withhold the amount of the delinquent taxes, together with penalties and interest thereon, from the amount of the refund and pay the same to the collector.

The record indicates that Narmore was delinquent in the payment of his general excise taxes for at least four other tax years. An "Installment Plan Agreement" prepared by the Department on December 17, 1996 for Narmore created a "payment schedule" for all of Narmore's outstanding State taxes. A "Detail Statement of Taxes Due" attached to the Installment Plan indicated that Narmore owed $5,365.92 in taxes for the 1989 tax year, not including the penalties and interest that were subsequently waived. The Statement also indicated that Narmore owed general excise taxes for the 1992, 1993, 1994, 1995, and 1996 tax years in excess of $40,000, not including the applicable penalties and interest charges.

We note that HRS § 231-23(c)(1) mandates "notice to the delinquent taxpayer," before the refund is withheld. The record is silent as to whether Narmore received prior notice that his excess payment from the 1989 tax year would be applied to his other tax delinquencies and as to specifically how the excess payment was applied. However, there is nothing in the record to indicate that this issue was raised and/or addressed in conjunction with the Tax Appeal Court's ruling on the

Department's motion for summary judgment. Accordingly, this issue was waived and we do not reach it on appeal. "Legal issues not raised in the trial court are ordinarily deemed waived on appeal." Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002).

Finally, Narmore seeks review of the Tax Appeal Court's order denying his HRCP Rule 60(b) motion. The disposition of an HRCP Rule 60(b) motion for reconsideration is reviewed for an abuse of discretion. Beneficial Haw., Inc. v. Casey, 98 Hawaiʻi 159, 164, 45 P.3d 359, 364 (2002). The purpose of a motion for reconsideration is "to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion[,]" not "to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding." Ass'n of Apartment Owners of Wailea Elua, 100 Hawaiʻi at 110, 58 P.3d at 621 (citation and internal quotation marks omitted). Narmore's motion fails to present new evidence and/or arguments, but merely reiterates facts and arguments previously presented. Therefore, the Tax Appeal Court was within its discretion to deny Narmore's HRCP Rule 60(b) motion.

For these reasons, the Tax Appeal Court's March 2, 2010 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, February 21, 2013.

On the briefs:

Bobby R. Narmore
Taxpayer/Appellant Pro Se

Hugh R. Jones
Damien A. Elefante
Deputy Attorneys General
for Appellee

Presiding Judge

Associate Judge

Associate Judge

9